UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

LAWRENCE JAMES K.,

Plaintiff,

-against- 5:25-CV-499 (LEK)

COMMISSIONER OF
SOCIAL SECURITY,

Defendant.

**MEMORANDUM-DECISION AND ORDER**

## I. INTRODUCTION

On April 22, 2025, Plaintiff Lawrence James Kline, II, appealed the decision of the Commissioner of Social Security denying Plaintiff's application for Supplemental Security Income ("SSI"), on the basis of a lack of disability. Dkt. No. 1 ("Complaint"). The action is brought pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3). *Id.* Plaintiff requests that the Commissioner's decision be vacated, and that the matter be remanded. Dkt. No. 11 ("Motion"). The Commissioner ("Defendant") filed a brief in opposition to Plaintiff's Motion. Dkt. No. 12 ("Response"). Plaintiff filed a reply. Dkt. No. 13 ("Reply"). For the reasons that follow, the Court remands the Commissioner's decision for further proceedings.

## II. BACKGROUND

On April 27, 2023, Plaintiff applied for SSI, alleging that his disability began on September 29, 2019. Dkt. No. 8 at 15 ("Administrative Record" or "AR"). Plaintiff alleges he has PTSD, herniated discs, scoliosis, and incomplete vertebrae, which prevent him from working. *Id.* at 58. The Commission initially denied Plaintiff's claim on July 11, 2023. *Id.* at 102.

Upon reconsideration, on February 1, 2024, the Commission again denied Plaintiff's claim. *Id.* at 109. Following a hearing on October 9, 2024, Administrative Law Judge Kenneth Theurer issued a decision denying Plaintiff's application on October 16, 2024. *See id.* at 12, 15.

On March 5, 2025, the Appeals Council denied Plaintiff's request for review. *Id.* at 1–3. Thus, the October 16, 2024 decision by the ALJ is the Commission's final decision in this case. *Id.* at 1.

**III. LEGAL STANDARD**

**A. Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Greek v. Colvin*, 802 F.3d 370, 374–75 (2d Cir. 2015). The Commissioner's decision will only be overturned "if the ALJ applies an incorrect legal standard, or if the ALJ's ruling is not supported by substantial evidence." *Rucker v. Kijakazi*, 48 F.4th 86, 91 (2d Cir. 2022). Substantial evidence is "more than a mere scintilla." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). This requires "only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co.*, 305 U.S. at 229). This "threshold for . . . evidentiary sufficiency is not high." *Id.* Where substantial evidence supports the ALJ's findings, the decision must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [ALJ's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). That is, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if

the record contains substantial support for the ALJ's decision. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

To facilitate the court's review, an ALJ must set forth "the crucial factors . . . with sufficient specificity to enable [the court] to decide whether the determination is supported by substantial evidence." *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019) (quoting *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984)). "It is not the function of this Court to speculate as to the evidence and legal standards on which the ALJ based [their] decision, nor to supply its own rationale where the ALJ's decision is lacking or unclear." *Dittmar v. Comm'r of Soc. Sec.*, No. 16-CV-0404 (CFH), 2017 WL 2333836, at *5 (N.D.N.Y. May 30, 2017).

**B. Standard for Benefits**

To be considered disabled, a claimant seeking SSI must establish that they are "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Commissioner uses a five-step process, set forth in 20 C.F.R. §§ 404.1520 and 416.920, to evaluate SSI and DIB claims:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing *Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008); 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v)). The claimant has

the burden of proof to establish a disability at the first four steps. *Id.* However, if the claimant establishes that their impairment prevents them from performing their past work, the burden shifts to the Commissioner to prove the final step. *Id*.

## IV. DISCUSSION

Plaintiff argues that the ALJ's assessment of the evidence regarding Plaintiff's physical condition was not supported by substantial evidence, and that the ALJ's residual functional capacity assessment with respect to Plaintiff's mental condition was also not supported by substantial evidence. Mot. at 9, 16. This Court proceeds as follows. First, it discusses the opinions of Drs. Padmaraju, Auerbach, and Snyder, with respect to supportability, consistency, and potential discrepancies between the prior opinions and the ALJ's Residual Functional Capacity (RFC) assessment. Second, it discusses the ALJ's analysis of Dr. Figueroa's opinion. Third, it discusses the ALJ's mental RFC assessment.

### A. Dr. Padmaraju's, Dr. Auerbach's, and Dr. Snyder's Opinions

*1. Supportability*

Plaintiff argues that the ALJ's finding that Dr. Padmaraju's, Dr. Auerbach's, and Dr. Snyder's opinions had sufficient supportability was not backed by substantial evidence. Mot. at 11. As Dr. Padmaraju's and Dr. Auerbach's opinions are grouped together, *see id.*, the Court discusses the ALJ's analysis of their opinions jointly, and then the ALJ's analysis of Dr. Snyder's opinion.

<u>A. Dr. Padmaraju and Dr. Auerbach</u>

Plaintiff argues that substantial evidence does not support the ALJ's supportability analysis for Drs. Padmaraju and Auerbach, because the doctors' "entire explanation for their opinions was '[l]imitations due to positive imaging, decreased ROM'" and, "[w]hile the doctors

briefly summarized some other evidence, they did not link these summaries to their opinions." Mot. at 11 (quoting AR at 62). Defendant represents Plaintiff's position as maintaining that the "ALJ erred in findings [sic] Drs. Padmaraju's and Auerbach's assessments persuasive because they did not fully summarize every article of record evidence." Dkt. No. 12 at 7 ("Response"). The Court does not recognize Plaintiff's argument to concern a failure to summarize every article of record evidence, but rather, the lack of connection between the ALJ's opinion and the medical evidence.

District courts have upheld ALJ rulings finding that a medical opinion is persuasive when the opinions are "supported by detailed narrative rationales, which cite supporting objective medical evidence and other evidence from the record." *Briselida R. v. Comm'r of Soc. Sec.*, No. 25-CV-210 (MAD) (PJE), 2026 WL 805677, at *4 (N.D.N.Y. Mar. 24, 2026); *see also Talford v. Comm'r of Soc. Sec.*, No. 22-CV-7442 (AMD), 2024 WL 1282659, at *8 (E.D.N.Y. Mar. 26, 2024) (finding error where "the ALJ did not explain how the record supported [the Doctor's] opinion"). Under the applicable regulations, the ALJ, in assigning weight to a medical opinion, must evaluate how supported it is by "objective medical evidence and supporting explanations." 20 C.F.R. § 404.1520c(c)(1). Additionally, when the ALJ fails to "provide a 'logical bridge' between the evidence and [their] conclusions," the Court "will . . . remand for further findings or a clearer explanation for the decision." *Dezarea W. v. Comm'r of Soc*. Sec., No. 21-CV-01138 (MAD) (TWD), 2023 WL 2552452, at *1 (N.D.N.Y. Mar. 17, 2023) (citation omitted).

Here, the ALJ states that "Dr. Padmaraju's and Dr. Auerbach's opinions are supported by a detailed narrative rationale," but fails to explain how each opinion relates to the "objective medical evidence." AR at 24; 20 C.F.R. § 404.1520c(c)(1). For this reason alone, the Court finds that the ALJ failed to provide a logical bridge between the evidence and the ALJ's conclusion

regarding the opinions' supportability. Thus, this error warrants remand. *See Dezarea*, 2023 WL 2552452, at *1.

b. Dr. Snyder

Plaintiff contends that "[s]ubstantial evidence does not support the ALJ's supportability analysis for Dr. Snyder's Medical Opinion" because the ALJ "failed to mention" Dr. Snyder's inability to assess Plaintiff's back issues, which was "a very significant fact to consider before asserting that Dr. Snyder's exam supported the Medical Opinion." Mot. at 12. In response, Defendant argues that "the ALJ was under no obligation to discuss every detail of Dr. Snyder's report, including that Plaintiff wore clothes during the examination." Resp. at 9.

In *Woods v. Comm'r of Soc. Sec.*, the Second Circuit held that substantial evidence supported the ALJ's evaluation because the ALJ "provided a rationale for why a medical source's opinion would be credited, identified inconsistencies among certain medical source opinions, and furnished citations to the record supporting her findings." No. 24-945-CV, 2025 WL 938639, at *3 (2d Cir. Mar. 26, 2025).

Here, the ALJ states that "Dr. Snyder's opinion is supported by her evaluation" and then discusses the evaluation in detail with citations to the record. AR at 24. Moreover, the ALJ found Dr. Snyder's opinion was supported by the diagnostic imaging in the record. *Id.* Plaintiff has not cited, nor has the Court's independent review revealed, any authority requiring an ALJ to explicitly mention factors that make a physician's evaluation less comprehensive. *See generally* Mot. Accordingly, the substantial evidence offered by the ALJ is "more than a mere scintilla." *Biestek*, 587 U.S. at 103. Thus, the Court finds Plaintiff's supportability argument unavailing.

*2. Consistency*

Plaintiff argues that "[s]ubstantial evidence does not support the ALJ's consistency analysis for the three opinions." Mot. at 12. Plaintiff challenges the ALJ's reliance on both diagnostic imaging and conservative treatment in evaluating consistency. *See id.* at 12–13. In response, Defendant cites to the ALJ's finding that "the doctors' opinions were consistent with diagnostic imaging" and claims that "the ALJ appropriately considered Plaintiff's conservative treatment when assessing his ability to work." Resp. at 9, 11. The Court discusses the imaging and conservative treatment issues in turn.

a. Imaging

Plaintiff contests the ALJ's finding that the opinions of Drs. Padmaraju, Auerbach, and Snyder are "consistent with the diagnostic images in record." AR at 24. Plaintiff asserts that the ALJ relied on imaging that predates the amended alleged onset date of January 6, 2022. *See* Mot. at 12. Additionally, the only timely report includes a lumbosacral x-ray showing no acute fracture or subluxation, *see* AR at 724, and Plaintiff asserts that "[t]here is no reason to believe that the x-ray must have been capable of showing findings relevant to Plaintiff's specific impairments," Mot. at 13. Defendant responds by referencing a January 12, 2024, post-onset x-ray showing "Plaintiff's lumbar spine revealing well maintained vertebral bodies and interverbal disc spaces with no acute fracture or subluxation." Resp. at 10.

An ALJ does not err in considering medical evidence that predates the Plaintiff's alleged disability onset date. *See Moore v. Comm'r of Soc. Sec.*, No. 16-CV-270 (DJS), 2017 WL 1323460, at *9 (N.D.N.Y. Apr. 10, 2017) (finding the ALJ did not err in considering a medical opinion that predated the alleged onset); *see also James N. v. Comm'r of Soc. Sec.*, 2020 WL 1140498, at *5 (N.D.N.Y. Mar. 6, 2020) ("[I]t is within an ALJ's purview to consider pre-onset

date evidence, [but] it is not required."). However, "[m]edical evidence that predates the alleged disability onset date is *ordinarily* not relevant to evaluating a claimant's disability." *Melissa R. v. Comm'r of Soc. Sec.*, 2021 WL 4844153, at *4 (N.D.N.Y. Oct. 18, 2021) (citation omitted) (emphasis added).

In the present case, the ALJ used pre-onset imaging to evaluate persuasiveness within the consistency analysis, but this does not constitute error supporting remand. *See Moore*, 2017 WL 1323460, at *9. Additionally, regardless of whether an x-ray was required to show the condition, the medical opinions were consistent with the diagnostic imaging, and the ALJ was entitled to consider that consistency in evaluating the record evidence. *See Kane v. Comm'r of Soc. Sec.*, No. 16-CV-7241, 2017 WL 2533410, at *6 (N.D.N.Y. June 9, 2017) ("The ALJ is entitled to weigh the evidence before her and determine and accept findings that are consistent with the evidence in the record."). It is beyond the scope of this Court's authority to reweigh that evidence. Thus, neither argument warrants remand.

b. Very Limited Conservative Treatment

The ALJ found that the findings of Drs. Padmaraju, Auerbach, and Snyder, were consistent with "the very limited, conservative treatment for [Plaintiff's] musculoskeletal impairments." AR at 24. Plaintiff asserts that "[t]he ALJ's unadorned reference to 'very limited, conservative treatment' does not provide meaningful support for the ALJ's conclusion." Mot. at 13 (cleaned up). Plaintiff also raises the ALJ's failure to "address Plaintiff's testimony regarding Plaintiff's understanding of his sensitivity to medication or his fear of dependance/addiction." *Id.* at 14. Defendant contends that "the ALJ appropriately considered Plaintiff's conservative treatment." Resp. at 11.

An ALJ may assess whether a physician's opinion is consistent with a plaintiff's course of treatment in evaluating the physician's opinion for consistency with the record. *See Johnson v. Comm'r of Soc. Sec.*, No. 18-CV-612 (DB), 2019 WL 3974126, at *4 (W.D.N.Y. Aug. 21, 2019) ("[T]he ALJ properly assigned great weight to the opinions of Drs. Santarpia and Jurgia because those opinions are consistent with the evidence showing conservative treatment."). However, an ALJ "will not find an individual's symptoms inconsistent with the evidence in the record [because of conservative treatment] without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." SSR 16-3p.

Here, the ALJ properly considered Plaintiff's limited and conservative course of treatment. *See Johnson*, 2019 WL 3974126, at *4. Plaintiff argues that the ALJ failed to address Plaintiffs reasons for pursuing conservative treatment, including "Plaintiff's belief that other forms of treatment—such as at-home physical therapy exercises—were preferable to previously-ineffective physical therapy and medications." Mot. at 14. However, these explanations do not prevent the ALJ from relying on Plaintiff's conservative course of treatment. The record does not provide noteworthy justification for Plaintiff's limited conservative treatment, which includes the use of a TENS unit, at-home physical therapy exercise, and cannabis for treatment. *See* Mot. at 13–14. Even if Plaintiff had continued with the physical therapy, Plaintiff's treatment would still constitute very limited, conservative treatment. *See Dolan v. Berryhill*, No. 17-CV-4202 (GBD) (HBP), 2018 WL 4658804, at *17 (S.D.N.Y. July 24, 2018), *report and recommendation adopted*, No. 17-CV-4202 (GBD) (HBP), 2018 WL 3991496 (S.D.N.Y. Aug. 21, 2018) ("Courts in this circuit routinely deem the types of treatment methods that were part of [the claimant's]

treatment regimen—physical therapy, heat therapy, Ibuprofen and a TENS device—'conservative' in nature.").

Plaintiff further contends that the ALJ failed to address Plaintiff's "sensitivity to medication or his fear of dependance/addiction." Mot. at 14. However, Plaintiff's medication concerns, including sensitivity to medications and fear of dependency or addiction, *see id.*, relate to mental health treatment and therefore do not pertain to the physical health issue presented here. Accordingly, the Court finds there were no relevant explanations for Plaintiff's conservative treatment that the ALJ failed to consider, and the ALJ was therefore entitled to weigh that conservative treatment.

*3. RFC Discrepancy*

Plaintiff raises two challenges to the ALJ's RFC determination. *See generally* Mot. Plaintiff argues that the ALJ failed to explain the difference between the opinions in the Prior Administrative Medical Findings (PAMFs),[1] and the RFC, and between Dr. Snyder's opinion and the RFC. *See id.* at 11–12. The Court addresses both arguments in turn.

a. Inconsistency on Stooping

The ALJ found in the RFC that the Plaintiff was able to perform occasional stooping. AR at 20. Plaintiff contends that "the ALJ did not acknowledge that the PAMFs included different opinions (such as frequent versus occasional stooping), which results in the ALJ failing to explain the difference between one of the PAMFs and the ALJ's RFC." Mot. at 11–12. In response, Defendant notes that the occasional stooping limitation was "more restrictive than

[1] "A prior administrative medical finding is a finding, other than the ultimate determination about whether you are disabled, about a medical issue made by [] Federal and State agency medical and psychological consultants at a prior level of review (see § 404.900) in [the] current claim based on their review of the evidence in [the] case record." 20 C.F.R. § 404.1513(a)(5).

what Dr. Auerbach found." Resp. at 8. Defendant further contends that "the fact that the ALJ accorded Plaintiff greater stooping limitations . . . is of no moment," since the inconsistency had been resolved in favor of a more restrictive RFC. *Id.*

"Notwithstanding the apparent inconsistency between the reports of [two doctors]," an ALJ is not required to "explicitly [] reconcile every conflicting shred of medical testimony." *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981). "Where an ALJ makes an RFC assessment that is *more* restrictive than the medical opinions of record, it is generally not a basis for remand." *Baker o/b/o Baker v. Berryhill*, No. 15-CV-00943 (MAT), 2018 WL 1173782, at *2 (W.D.N.Y. Mar. 6, 2018) (emphasis in original); *see also Ramsey v. Comm'r of Soc. Sec.*, 830 F. App'x 37, 39 (2d Cir. 2020) (holding that the ALJ did not err by deviating from examiners' recommendations to decrease Plaintiff's RFC based on other record evidence).

Here, Plaintiff's argument that the ALJ was required to explain the difference between the PAMFs and the RFC is unavailing for two reasons. First, the ALJ was not required to explicitly resolve every conflict between the PAMFs. *See Miles*, 645 F.2d at 124. Second, the ALJ adopted an RFC that was more restrictive than the medical opinions at issue, which is generally not a basis for remand. *See Baker o/b/o Baker*, 2018 WL 1173782, at *2. Accordingly, the ALJ did not err, and remand is not appropriate. *See Ramsey*, 830 F. App'x at 39.

b. Dr. Snyder's Opinion

The ALJ found that Plaintiff "has the residual functional capacity to perform light work." AR at 20. Specifically, the ALJ found that Plaintiff could "perform occasional balancing, stooping, kneeling, crouching, and crawling," and could "occasionally lift and carry twenty pounds, [and] frequently lift and carry ten pounds." *Id.* Plaintiff argues that the RFC is inconsistent with Dr. Snyder's opinion, which imposed "mild restriction[s] for bending, twisting,

pushing, pulling, and carrying." Mot. at 12. In response, Defendant contends that "Dr. Snyder's opinion . . . is consistent with the ability to do light work." Resp. at 9. Additionally, Defendant argues that the ALJ's RCF finding did not have to precisely follow every limitation in Dr. Snyder's opinion. *Id.*

"[A] number of courts have found that 'moderate' limitations for standing, walking, sitting, and lifting are consistent with the ability to do light work." *Jordan v. Comm'r of Soc. Sec.*, No. 16-CV-9634 (KHP), 2018 WL 1388527, at *10 (S.D.N.Y. Mar. 19, 2018); *see also Stacey v. Comm'r of Soc. Sec.*, No. 09-CV-0638 (DNH) (VEB), 2011 WL 2357665, at *6, 8 (N.D.N.Y. May 20, 2011) (finding that a medical opinion suggesting "moderate limitations in activities" was consistent with an RFC for "a wide range of light work," and that there was "no reversible error with regard to the ALJ's RFC determination").

"Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013)

Here, the ALJ's RFC determination for light work is consistent with Dr. Snyder's opinion of mild restrictions. *See Jordan*, 2018 WL 1388527, at *10. Additionally, had there been slight differences between Dr. Snyder's opinion and RFC, it still would have been within the ALJ's discretion to have an RFC that did not match Dr. Snyder's opinion perfectly. *See Matta*, 508, F. App'x 53 at 56. Thus, the Court finds that remand is not warranted on this issue. *See Stacey*, 2011 WL 2357665, at *8.

**B. Dr. Figueroa's Opinion**

The ALJ was "less persuaded by the opinion of [Dr.] Rita Figueroa." AR at 24. The ALJ found that "Dr. Figueroa's opinion has some support from her evaluation of the claimant, [but] is . . . not entirely supported by the claimant's statement to Dr. Figueroa." *Id.* (citation omitted). The ALJ also found that the "'marked' physical limitations Dr. Figueroa outlined" were not consistent with the record. *Id.* at 24–25. Plaintiff argues that the ALJ's analyses with respect to supportability and consistency are both not supported by substantial evidence. Mot. at 14–16.

*4. Supportability*

In arguing that Dr. Figueroa's opinion was not entirely supported by Plaintiff's statement, the ALJ noted that "Dr. Figueroa advised that the limitations she outlined were based in part on the claimant's bilateral knee arthritis, but he acknowledged that he had never undergone diagnostic testing to determine the etiology of his symptoms." AR at 24. Plaintiff claims "[t]here is no basis for the ALJ's implied assertion that [testing] was necessary to adequately assess Plaintiff's condition, especially where Dr. Figueroa explicitly observed 'Left knee crack' and limitation in squatting." Mot. at 15. Plaintiff also notes that the conversation between Dr. Figueroa and Plaintiff was more focused on Plaintiff's back issues than knee problems. *Id.* Defendant counters that the ALJ adequately considered supportability and Plaintiff's claim that he had not undergone diagnostic testing. Resp. at 10.

This Court finds that there was substantial evidence in the record to support the ALJ's conclusions. *See Vasquez v. Colvin*, No. 16-CV-03610 (VSB) (DCF), 2017 WL 11490688, at *25 (S.D.N.Y. Sept. 8, 2017), *report and recommendation adopted sub nom. Vasquez v. Saul*, No. 16-CV-3610 (VSB) (DCF), 2019 WL 5682631 (S.D.N.Y. Nov. 1, 2019) ("[A]s the ALJ's findings were well supported by the medical evidence, they are entitled to deference."). The ALJ

reasonably noted a component of Dr. Figueroa's report that was not supported by the evidence. *See* AR at 24. Even if the ALJ could have reached an alternative conclusion regarding how supported Dr. Figueroa's opinion was, "this Court defers to the ALJ's reasonable interpretation of the evidence." *Ronny Y. v. Comm'r of Soc. Sec.*, No. 23-CV-804S, 2024 WL 4273357, at *8 (W.D.N.Y. Sept. 24, 2024). As the ALJ's opinion was reasonable, it is entitled to that deference.

*1. Consistency*

The ALJ wrote that Dr. Figueroa's conclusion of "marked" limitations "are not consistent with the other physical examinations outlined above, are not consistent with the diagnostic images in record, are not consistent with the other opinion evidence, and are not consistent with the claimant's broad range of daily activities, which included work at various side jobs." AR at 24–25. Plaintiff disputes the ALJ's use of the imaging, and the claimant's daily activities. Mot. at 14–16. Each issue is discussed in turn.

a. Imaging

Plaintiff argues that "the imaging does not readily clarify how Dr. Figueroa's opinion was reasonably assessed." Mot. at 15. Defendant counters that Dr. Figueroa's "marked limitations were . . . inconsistent with a normal lumbar spine x-ray." Resp. at 10. Plaintiff had received a spine x-ray showing "no acute fracture or subluxation." AR at 724.

An ALJ must "explain *how* the opinion was inconsistent with the imaging evidence in the record [and] identify the imaging evidence being relied on." *Govan v. Comm'r of Soc. Sec.*, No. 22-CV-8997 (VF), 2024 WL 449290, at *10 (S.D.N.Y. Feb. 6, 2024) (emphasis in original). However, as long as "the ALJ's reasoning can be gleaned from the record," this Court is permitted to uphold the ALJ. *Melissa F. v. Comm'r of Soc. Sec.*, No. 20-CV-1363 (WBC), 2021 WL 3887256, at *5 (W.D.N.Y. Aug. 31, 2021) (citing *Cichocki v. Astrue*, 729 F.3d 172, 178 n.3

(2d Cir. 2013)). In this case, the ALJ cites specific imaging in the paragraph immediately prior to the paragraph discussing Dr. Figueroa's opinion. *See* AR at 24. The Court infers that the diagnostic imaging the ALJ thought were consistent with the opinions of Drs. Padmaraju, Auerbach, and Snyder, were the same imaging that the ALJ believed to be inconsistent with Dr. Figueroa's opinion. As "the ALJ's failure to clearly analyze [the imaging] [does not] 'prevent[] meaningful review,'" remand is not required on this issue. *See Melissa F.*, No. 20-CV-1363 (WBC), 2021 WL 3887256, at *5 (quoting *Poole v. Comm'r of Soc. Sec.*, No. 18-CV-0267, 2020 WL 4805735, at *4 (W.D.N.Y. Aug. 18, 2020)

b. Activities

Plaintiff argues that the ALJ was required to describe how he considered the Plaintiff's explanations for the activities he engaged in. As Plaintiff describes, he "testified that he stopped hunting, that he only assisted the actual current wrestling coach . . . and did not currently coach wrestling, and that Plaintiff's assistance of his friend's work was simply conversing with his friend, not actually doing work." Mot. at 15–16 (citing AR at 42, 50–51). Plaintiff notes that "[e]ven if the ALJ *could have* offered an analysis to discredit this testimony, the ALJ never discussed it in the decision." *Id.* at 16 (emphasis in original). Defendant, by contrast, points to a much broader range of activities performed by the Plaintiff. Resp. at 10–11. In his analysis of the Plaintiff's daily activities, the ALJ found that the Plaintiff "to some extent . . . is able to attend to his personal care needs; clean; cook; socialize; manage finances; travel independently; drive; and engage in hobbies." AR at 21. Other activities mentioned by the ALJ included deer hunting, camping, walking one to two miles, helping his children with wrestling and softball, being active in his church, and coaching wrestling. *Id.* With respect to employment, the ALJ claims that

Plaintiff said "he was doing odd job with his friends," as of November 2022, and as of September 2023, "the claimant was helping his friend doing side jobs." *Id.*

Regulations require that an ALJ "explain how [he] considered the individual's reasons in [his] evaluation of the individual's symptoms." SSR 16-3p. This may include considering how the claimant "structured his . . . activities to minimize symptoms to a tolerable level by avoiding physical activities or mental stressors that aggravate his . . . symptoms." *Id.* An ALJ is permitted "to consider the consistency of [a medical] opinion with Plaintiff's reported activities of daily living." *Casara O. v. Comm'r of Soc. Sec.*, No. 23-CV-06446 (EAW), 2024 WL 3963538, at *7 (W.D.N.Y. Aug. 28, 2024).

Here, the Plaintiff did not offer explanations for his activities, but rather framed those activities in a slightly different light than presented by the ALJ. *See* AR at 42–43, 50–51. An explanation is a reason for why the Plaintiff engaged in particular actions. *See, e.g.*, *McCants v. Astrue*, No. 09-CV-01830 (VLB), 2010 WL 4363423, at *10 (D. Conn. Oct. 21, 2010) (finding that the ALJ should have acknowledged the "plaintiff's explanation for not wearing [compression] socks" —that the plaintiff could not afford them). Here, Plaintiff argues that he no longer hunts, was not in fact coaching wrestling, and was not working side jobs. *See* Mot. at 15–16. These are not explanations, but differences in interpretation. The ALJ's interpretation here was reasonable, and it is therefore entitled to deference. *See Ronny Y.*, 2024 WL 4273357, at *8.

**C. ALJ's Mental Residual Functional Capacity Assessment**

Plaintiff maintains that the "ALJ's determined RFC does not contain the level of restriction suggested by the ALJ's PRT finding," and therefore, "[t]he ALJ's decision lacks the support of substantial evidence." Mot. at 16. According to Defendant, "Plaintiff erroneously argues that the ALJ was required to expressly include the moderate limitations . . . identified at

[s]tep 3 in the RFC determination." Resp. at 12. Defendant further asserts that "Plaintiff's argument lacks merit because the ALJ's findings at step 3 of the sequential analysis are not an RFC determination." Resp. at 13.

Courts have recognized "that an ALJ is not obligated to explicitly incorporate his step three findings into the RFC." *Shari L. v. Kijakazi*, No. 20-CV-1266 (ATB), 2022 WL 561563, at *9 (N.D.N.Y. Feb. 24, 2022). This is because "the ALJ's findings at step 3 of the sequential analysis are not an RFC determination." *Poole v. Saul*, 462 F. Supp. 3d 137, 162 (D. Conn. 2020) (cleaned up). Thus, an ALJ does not err by failing to "explicitly incorporate all of his step three findings into the RFC determination," and remand is therefore not warranted. *Shari L.*, 2022 WL 561563, at *9–10.

In the present case, Plaintiff's position concerns the ALJ's alleged failure to incorporate the moderate limitations into the RFC, but the ALJ was not required to do so. *See Shari L.*, 2022 WL 561563, at *9. Even if the ALJ was required to include those limitations in the RFC, the ALJ's step three findings were not an RFC determination, so this argument is unpersuasive. *See Poole*, 462 F. Supp. 3d 137, 162. Accordingly, remand is not warranted on this basis. *See Shari L.*, 2022 WL 561563, at *9–10.

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Plaintiff's Motion, Dkt. No. 11, is **GRANTED in PART** and **DENIED in PART**; and it is further

**ORDERED**, that the decision of the Commissioner is **VACATED**; and it is further

**ORDERED**, that the case is **REMANDED** for further administrative proceedings consistent with this opinion; and it is further

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED: September 21, 2026
Albany, New York

LAWRENCE E. KAHN
United States District Judge